UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ATLANTIS HYDROPONICS, INC.,

          Plaintiff,

    v.

INTERNATIONAL GROWERS
SUPPLY, INC.,

          Defendant.

CIVIL ACTION NO.

1:12-CV-1206-CAP

# **O R D E R**

This declaratory judgment action, seeking declaration of invalidity or non-infringement of two patents, is before the court on the following motions:

1. The defendant's motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer to the Central District of California [Doc. No. 7];

2. The plaintiff's motion to conduct jurisdictional discovery [Doc. No. 12];

3. The plaintiff's motion for leave to file a supplemental brief in opposition to the motion to dismiss [Doc. No. 15];

4. The defendant's motion for leave to file a proposed sur-reply brief [Doc. No. 21];

5.  The defendant's supplemental motion for leave to file supplemental legal authority [Doc. No. 24]; and

6.  The plaintiff's motion to stay this action pending reexamination of the defendant's patent by the U.S. Patent and Trademark Office (PTO) [Doc. No. 27].

Each of the three motions for leave to file supplemental briefs [Doc. Nos. 15, 21, 24] is GRANTED as unopposed. Having considered the briefs and the record, the court concludes it cannot exercise personal jurisdiction over the defendant. Accordingly, the defendant's motion to dismiss [Doc. No. 7] is GRANTED. The plaintiff's motion to conduct jurisdictional discovery [Doc. No. 12] is DENIED. Because the court dismisses the action, the plaintiff's motion for a stay [Doc. No. 27] is DISMISSED AS MOOT.

## I.   Introduction

Plaintiff Atlantis Hydroponics, Inc. (Atlantis) is a corporation based in Georgia. It sells hydroponic growing kits, grow rooms, grow lights, and other supplies. Among Atlantis's products are its Viagrow Grow Tents, which are canvas indoor greenhouses. Defendant International Growers Supply, Inc. (International), incorporated in California, is likewise in the hydroponics retailing business. In particular, it sells a line of indoor greenhouses under the brand name HydroHuts. International is the owner, by assignment, of

two patents that cover its HydroHuts products: U.S. Patent Nos. 7,823,324 B2 and 7,975,428 B2 (the ′324 and ′428 patents, respectively).

On March 26, 2012, International sent a letter to Steve Sevener and Demetri Hubbard, Atlantis's co-owners, describing the two patents and asserting that Atlantis and its customers were infringing the patents. The letter, sent by International's counsel for "licensing and enforcement of its patents," offered a settlement and license as an alternative to litigation. The letter also warned that litigation could be "more destructive than it is productive" but could "result in enormous recoveries after trial." The letter stated there was "considerable urgency to concluding all license negotiations by late April" and provided a deadline of April 1, 2012, for Atlantis to respond. *See generally* Ex. C to Compl. [Doc. No. 1-3].

Fearing that International would sue it for patent infringement, Atlantis filed this action for declaratory judgment on April 9, 2012 [Doc. No. 1]. The complaint seeks declarations of invalidity and non-infringement of both the ′324 and ′428 patents. True to its threat, International sued Atlantis and other parties for infringement of the same patents in the Central District of California just four days later, on April 13. On August 8, the judge in the California action granted Atlantis's motion to transfer that case to this district under the "first-to-file" rule, because this declaratory judgment action

had been filed first. *See Int'l Growers Supply, Inc. v. Atlantis Hydroponics, Inc.*, No. 1:12-cv-2728-CAP (N.D. Ga. Aug. 8, 2012) [Doc. No. 43] (order granting motion to transfer).[1]

In both this declaratory judgment action and the infringement action filed in California, the defendants contested the respective court's personal jurisdiction. Relevant to the present motions, Atlantis alleges in its complaint, under the heading Personal Jurisdiction: "Defendant [International] transacts extensive business within this state. Namely, Defendant's products are sold by dozens of dealers in the State of Georgia, as evidenced by the listing of dealers provided through Defendant's website www.HydroHuts.com." Compl. ¶ 10 [Doc. No. 1]. Additionally, the complaint contains allegations describing International's license demand letter and includes the letter as an attachment. *Id.* ¶¶ 26–30.

Interestingly, both the plaintiff and defendant point to the hydrohuts.com website as evidence of the defendant's activities in the State of Georgia relevant to the personal jurisdiction issue. As noted above, according to the plaintiff, the website demonstrates the defendant's "extensive business within this state." On the other hand, International's

---

[1] Both cases are now pending before the undersigned, and International has filed a motion to consolidate the cases.

motion to dismiss repeatedly refers to this website in support of its contention that it does *not* have substantial contacts in this forum. For example, International argues that it "has no places of business within the State of Georgia, does not reside in the State of Georgia, and has no distributors (also see http://hydrohuts.com/) or other personnel . . . within the State of Georgia." Def.'s Mot. to Dismiss 2 [Doc. No. 7-1]. Additionally, International contends that the website "establishes that the Defendant has no distributors within the State of Georgia, and does not have an interactive website, and thus residents of the State of Georgia have not (and cannot have) ordered products of the Defendant to be shipped into the State of Georgia. (See http://hydrohuts.com/)." *Id.*

The court has reviewed the website and makes the following findings. Hydrohuts.com is a largely static website where customers can find general information about the HyrdoHuts product. It touts the product as being covered by the ′324 and ′428 patents, contains a link to a list of "Authorized HydroHut Distributors," provides directions for HydroHut assembly, answers frequently asked questions, and directs users to contact an email address for other questions or comments. The website also includes page labeled "Find a Dealer Near You," where users can input their location, press a "Search" button, and view a list of retail locations near that address. *See* Find a Dealer

Near You, http://hydrohuts.com/find-a-dealer-near-you (last visited Dec. 26, 2012). According to Atlantis, as of April 2012 a search using this feature provided a list of over thirty dealers within Georgia; by June 27, 2012 (after the defendant had filed its motion to dismiss), the number of Georgia dealers displayed dropped to only six businesses. *See* Pl.'s Resp. in Opp'n 2–3 [Doc. No. 11]. The obvious impression to any user of the "Find a Dealer Near You" page on the hydrohuts.com website is that the HydroHuts product would be for sale at these locations. Of course, if this impression is true, these results of the "Find a Dealer" search contradict both International's argument in its motion to dismiss and the declaration filed in support of the motion that HydroHuts are not sold in Georgia.

In its reply brief, International attempts to explain the discrepancy between its assertion that it has no dealers in Georgia and its own website's display of at least six dealers in this state. Essentially, International's argument is that although the website shows several Georgia dealer locations, these locations indicate only dealers of products sold by Hydrofarm—a wholesale distributor of HydroHuts and other products—and do not necessarily indicate that HydroHuts are sold at those locations.

In a second declaration filed in support of its motion, International's President, Evan Townsley, explains the basis for International's contention.

International sells the HydroHut exclusively through wholesale distributors, including non-party Hydrofarm. Townsley Decl. ¶ 7 [Doc. No. 16-1]. "International Growers sells its HydroHuts® to Hydrofarm and Hydrofarm, in turn, sells to retail stores, who, in turn, sell to the end consumer. Hydrofarm, however, does not, and will not, share with International Growers its store locations, or how or where it is selling the HydroHut® products." *Id.* Townsley has asked Hydrofarm to tell him where the HydroHuts are sold, but Hydrofarm has refused. *Id.* ¶ 8. So, International created a computer program to search *Hydrofarm*'s website "for all outlets where *any* Hydrofarm products are sold." International then used the results of that search to create the list which is displayed when a site visitor uses the "Find a Dealer" feature on the HydroHut website. *Id.* Thus, "[t]he list used on the HydroHut® website is a list of all stores where *any* Hydrofarm products are sold. It is not a list of all stores where International Growers products are sold." *Id.* ¶ 9. To determine whether HydroHuts are sold at a particular dealer, prospective customers would need to call the store they were interested in visiting and inquire whether it carried the HydroHut product. *Id.*

However, the website itself does not present this information or instruction to its users. In particular, the Find a Dealer feature does not tell

users they must call local dealers to inquire whether HydroHuts are sold there. Rather, the website proclaims that there are "people everywhere who want to sell you an awesome HydroHut" and instructs users to "Search for an authorized dealer near you!" *See* http://hydrohuts.com (last visited Dec. 26, 2012).

## II. Defendant's Motion to Dismiss or, Alternatively, to Transfer [Doc. No. 7]

### A.  No Waiver of Defense of Personal Jurisdiction

International moved to dismiss the complaint on June 26, 2012 [Doc. No. 7]. However, the time for International to file an answer or other "responsive pleading" had technically expired, *see* Fed. R. Civ. P. 12(a), so International contemporaneously moved set aside "any technical default." *See* [Doc. No. 8]. Atlantis moved the strike the motion to dismiss, arguing such defense had been waived under Fed. R. Civ. P. 12(h)(1), but did not oppose the motion to set aside the default. *See* [Doc. No. 9]. Accordingly, the court granted the motion to set aside default and denied the motion to strike on July 23, 2012 [Doc. No. 14]. At that time, the court stated, "Whether the defendant waived the defense of personal jurisdiction by failing to 'timely' assert it can wait for another day." With briefing now complete on both the waiver issue and the motion to dismiss, that day has come.

The court concludes that the defendant here did not waive the defense of personal jurisdiction. Although the motion was not filed within the time prescribed by the Federal Rules of Civil Procedure, the defense *was* raised in the first responsive pleading or paper filed, aside from the motion to set aside default. Further, the plaintiff consented to setting aside the default. In *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003), the court explained, "[A] party's right to dispute personal jurisdiction on insufficient service of process grounds is waived if the party fails to assert that objection in his first Rule 12 motion, other initial pleading or general appearance." Further, the court extended the rule to hold that a party waives the defense of insufficient service if it is not raised in a Rule 60(b) motion to set aside a default judgment. *Id.* at 1300. Rather, the defense must be raised "when a party first moves under Rule 60(b)" in order to preserve it. *Id.*

The defense here is lack of personal jurisdiction rather than insufficient service of process, but these defenses are related and the reasoning of the court in *In re Worldwide* also applies to these circumstances. It follows then that if the defense of insufficient service can be raised—albeit "untimely" under Atlantis's argument—in a Rule 60 motion for relief from a default judgment that had been entered, then the defense of lack of personal jurisdiction can be raised in when a party "first moves" to dismiss under Rule

12(b)(2) and contemporaneously moves to set aside default where no default judgment has been entered. International did not waive the defense of lack of personal jurisdiction under Fed. R. Civ. P. 12(h)(1) because it raised the defense in its first motion, even if it was not "timely" made. This is especially true where that motion to set aside default was not opposed by Atlantis. Accordingly, the court will consider the motion to dismiss on its merits.

### B.   The Law of Personal Jurisdiction

Because Atlantis seeks only declarations of non-infringement and invalidity, Federal Circuit law governs the personal jurisdiction issue. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994). In the absence of jurisdictional discovery, the plaintiff bears the burden of establishing only a prima facie case for personal jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prod.*, Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005). In analyzing the issue, the court construes all "pleadings and affidavits in the light most favorable to the plaintiff." *Id.* at 1282–83.

10

Personal jurisdiction may be based on either general or specific jurisdiction. The Supreme Court recently highlighted the difference between the two types of personal jurisdiction:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (stating that the requirements for specific personal jurisdiction are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities" (citation and footnote omitted)).

### 1.    General Jurisdiction

As the Supreme Court discussed in *Goodyear*, a defendant's contacts must be "so 'continuous and systematic' as to render them *essentially at home* in the forum." 131 S. Ct. at 2851 (emphasis added). "Neither the United States Supreme Court nor the Federal Circuit 'has outlined a specific test to follow when analyzing whether a defendant's activities within a forum are continuous and systematic.' Instead, the 'court must look at the facts of each case to make such a determination.'" *Lake Assocs., LLC v. DNZ Prods. LLC*, ___ F. Supp. 2d ___, No. 3:12-cv-497-SI, 2012 WL 3573892, at *5, (D. Or. Aug. 20, 2012) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009); *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)); *accord Arlington Indus., Inc. v. Elec. Custom Distribs., Inc.*, 817 F. Supp. 2d 473, 478 (M.D. Pa. 2011) ("[A] district court will look to the aggregate effect of [the defendant's] contacts as a whole" to evaluate "whether the company's contacts are substantial for the forum." (citing *Aeration Solutions, Inc. v. Dickman*, 85 F. App'x 772, 774 (Fed. Cir. 2004) (internal quotation omitted))).

2.    *Specific Jurisdiction*

A court's exercise of specific jurisdiction over an out-of-state defendant must be "consistent with both the forum state's long-arm statute and the requirements of due process." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 788–89 (Fed. Cir. 2011). The first prong of the Georgia long-arm statute confers personal jurisdiction over a resident who "[t]ransacts any business" within Georgia. O.C.G.A. § 9-10-91(1). The "transacts any business" prong provides personal jurisdiction over any person who transacts any business in Georgia, and thus its reach is limited to the extent permitted by due process. *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 355 (Ga. 2005).

Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process. The Federal Circuit applies a three-prong test to determine if the exercise of personal jurisdiction over a defendant satisfies the requirements of due process, considering whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge*, 444 F.3d at 1363. As to the third prong of this test, "the burden of proof is on the defendant, which must

'present a compelling case that the presence of some other considerations

would render jurisdiction unreasonable' under the five-factor test articulated

by the Supreme Court in *Burger King*." *Id.* (quoting *Burger King*, 471 U.S. at

476–77).[2]

The Federal Circuit Court of Appeals has explained the relationship

between the declaratory judgment plaintiff's claims and the defendant's

conduct when examining specific jurisdiction:

> [A]n action for a declaratory judgment "arises out of or relates to
> the activities of the defendant patentee in enforcing the patent or
> patents in suit," and . . . the relevant inquiry for specific
> jurisdiction is "to what extent the defendant patentee
> purposefully directed such enforcement activities at residents of
> the forum and the extent to which the declaratory judgment
> claim arises out of or relates to those activities." Thus, only those
> activities of the patentee that relate to the enforcement or
> defense of the patent can give rise to specific personal jurisdiction
> for such an action.

*Radio Sys. Corp.*, 638 F.3d at 789 (quoting *Avocent*, 552 F.3d at 1332); *see*

*also Avocent*, 552 F.3d at 1338 ("[A]s we have held . . ., the mere sale of

defendant's products—whether covered by the patents in suit or not—is not

---

[2] International's briefing in support of its motion to dismiss does not address
the *Burger King* reasonableness factors. Instead, the defendant argues only
that its contacts with the forum state are insufficient to satisfy either the
general or personal jurisdiction contacts analysis. Thus, the defendant cannot
meet its burden on this prong, and the court will address only the first two
prongs of the Federal Circuit's jurisdiction test.

sufficient to establish specific personal jurisdiction in a declaratory judgment suit.").

Some of the activities the Federal Circuit has found "relate to" the enforcement of a patent include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*, 552 F.3d at 1334. On the other hand, "the defendant patentee's own commercialization activity does not" reflect the kind of "other activities" that support specific personal jurisdiction in a declaratory judgment action. *Id.* at 1335.

> 3.   *Stream of Commerce Theory*

Although the plaintiff does not make exactly clear which theory of personal jurisdiction—general or specific—it relies upon, it discusses both at various points in the briefing on this issue. What *is* clear is that under both theories, the plaintiff argues jurisdiction is appropriate under the so-called "stream of commerce" theory of jurisdiction. Therefore, the court will discuss the theory before explaining why it does not apply in this action.

The Supreme Court has held that "placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment" of that state's

laws, so that personal jurisdiction over a non-resident defendant may be appropriate. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).[3] In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), four Justices believed that a defendant must do "something more" than merely deliver its product into the stream of commerce to be subject to jurisdiction in a forum:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112 (O'Connor, J.). Four other Justices disagreed and would have held that establishing personal jurisdiction in a forum simply requires "regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* at 117 (Brennan, J., concurring) (arguing, "As long as a participant

---

[3] In *McIntyre*, Justice Kennedy also wrote that the stream of commerce "refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact." 131 S. Ct. at 2788.

in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."). Since *Asahi*, the Supreme Court has declined to reconcile the two approaches. *See generally McIntyre*, 131 S. Ct. 2780.

The stream of commerce precedent also applies in patent cases. In a patent infringement action, the Federal Circuit held the court had personal jurisdiction over the defendants because they had (1) "placed the accused [product] in the stream of commerce, [(2)] they knew the likely destination of the products, and [(3)] their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (declining to "join [the] debate" over which version of *Asahi* should apply because the plaintiff made a sufficient showing under both). Subsequently, the Federal Circuit held that the stream of commerce theory applies to patent declaratory judgment actions as well. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996) ("All the reasons for adopting and applying the stream of commerce theory to the question of personal jurisdiction over an out-of-state alleged infringer as defendant, fully explored in *Beverly Hills Fan*, are equally applicable to the same question regarding an out-of-state patentee as defendant."). More recently, the Federal Circuit reiterated that personal

jurisdiction premised on a stream of commerce theory involves a "case-by-case" inquiry of the "particular facts of a case." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir. 2012) (reviewing Federal Circuit precedent and concluding the court did not have personal jurisdiction over accused infringer "regardless of how one articulates the stream of commerce theory").

### C.   Analysis

Turning to the complaint at hand, the court concludes that it does not have personal jurisdiction over the defendant. Even assuming the plaintiff's allegations are true—that is, that International has transacted "extensive business" within this state, Compl. ¶ 10 [Doc. No. 1]—such activity neither rises to the level of "continuous and systematic" activity to warrant general jurisdiction nor does the declaratory judgment claim arise out of that activity to warrant specific jurisdiction.

*1. There is No General Jurisdiction Over the Defendant*

Even assuming the plaintiff's allegations and arguments are true, the court cannot assert general personal jurisdiction over the defendant. The only factual allegation in the complaint regarding the defendant's contacts in Georgia is: "Defendant transacts extensive business within this state. Namely, Defendant's products are sold by dozens of dealers in the State of

Georgia, as evidenced by the listing of dealers provided through Defendant's website www.HydroHuts.com." Compl. ¶ 10 [Doc. No. 1]. International attempted to controvert this allegation by presenting the declaration of Mr. Townsley, its President, in support of the motion to dismiss. But Mr. Townsley's declaration contradicts the motion's repeated reference to his own website for the HyoroHut product, which prominently includes a "Find a Dealer" feature that displays numerous Georgia locations. The HydroHut home page prominently proclaims: "We've got people everywhere who want to sell you an awesome HydroHut. Search for an authorized dealer near you!" *See* http://hydrohuts.com (last visited Dec. 26, 2012) (additionally linking to the Find a Dealer page with the text, "Click Here To Find a HydroHut Dealer Near You!"). Any visitor would conclude from the site that the HyrdoHut product could be found at the locations returned, notwithstanding Mr. Townsley's belated attempt to explain away this implication in his second declaration.[4] Thus, for the purpose of considering this motion to dismiss, the court has assumed the allegation of "extensive" sales of the HydroHuts in Georgia as true.

---

[4] The court need not even consider this second declaration attached to International's reply brief—International knew every fact presented in it at the time it filed the motion to dismiss. *See* LR 7.1A(1), NDGa. ("If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law.").

Even so, simply selling products in a forum through the stream of commerce is not sufficient to support general jurisdiction. As the Supreme Court recently reiterated, "mere purchases made in the forum State, even if occurring at regular intervals, are not enough to warrant a State's assertion of general jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Goodyear*, 131 S. Ct. at 2856 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)). Rather, the defendant's contacts must be so continuous and systematic as to render them "essentially at home" in the state to give general jurisdiction. *Id.* at 2851. Even *extensive* purchases do not necessarily make a defendant "at home" in a forum so that it may be sued in a cause of action not related to those sales. *See id.* at 2856 (criticizing the "sprawling view of general jurisdiction" that would make "any substantial manufacturer or seller of goods . . . amenable to suit, on any claim for relief, wherever its products are distributed."). Atlantis has not accused International of employing Georgia residents, maintaining any offices or property in Georgia, visiting Georgia, or having any contact with anyone in Georgia except through the licensing demand letter and the supposed sales of its products in the state. Rather, Atlantis alleges International sells its products within the forum and argues these products reach the forum through the stream of commerce. Such

contacts are not continuous and systematic enough to render International "at home" in this forum.

In support of its contention that general jurisdiction is appropriate, Atlantis principally points to two cases. First, it argues that the Federal Circuit has "suggested" that sales activities analyzed under a stream of commerce theory "can support an exercise of general jurisdiction." Pl.'s Resp. in Opp'n 8 [Doc. No. 11] (citing *Avocent*, 552 F.3d at 1336). The court disagrees. Although the court in *Avocent* stated that a patentee's sales in a forum "*may* in the aggregate justify the exercise of general jurisdiction over the patentee," 552 F.3d at 1336 (emphasis added), the court did not so hold in that case; it merely hypothetically contrasted the activities that were necessary to find specific jurisdiction in a patent declaratory judgment action. Further, the Federal Circuit's "suggestion" that stream of commerce activities "may" possibly aggregate to justify general jurisdiction predated the Supreme Court's holding in *Goodyear*, which undercuts this theory. *See* 131 S. Ct. at 2856. Nevertheless, the facts at issue do not present one of those situations where the contacts, even in the aggregate, justify the exercise of general jurisdiction.

Second, Atlantis cites a district court case from Ohio where the court found general jurisdiction existed. In *Step2 Co., LLC v. Parallax Group*

*International, LLC*, No. 5:08-cv-2580, 2010 WL 3783151 (N.D. Ohio Sept. 17, 2010), the declaratory judgment plaintiff, like Atlantis here, relied on the stream of commerce theory to argue the court had personal jurisdiction over the defendant. The parties did not dispute that defendant Parallax had distributed products covered by the patent at issue through its relationships with retailers Sam's Club, Manards, Sears.com, and Amazon.com. *Id.* at *1. The court concluded that the defendant's relationships with these companies—particularly the large national chain Sam's Club, which sold more than $1 million of the patented product to Ohio residents alone—showed the defendant's "continuous and systematic" contact with Ohio and its purposeful availment of the benefit of doing business within the state. *Id.* at *6.

However, the facts in *Step2* are distinguishable from the facts here, and the conclusion of that court is questionable based on more recent Supreme Court authority. First, there are far fewer contacts alleged in this case than in *Step2*: Atlantis's allegations are only that the defendant sells its product through the locations shown on HydroHuts.com, which are all smaller hydroponics retailers as compared to the large national chains carrying the defendant's products in *Step2*. Moreover, the recent Supreme Court cases analyzing the stream of commerce theory call into question the Ohio court's

holding that it had general jurisdiction over the defendant. These cases make clear that while the stream of commerce theory may support a finding that *specific* jurisdiction is appropriate, the conclusion that stream of commerce can support assertion of general jurisdiction is questionable, at minimum. *See Goodyear*, 131 S. Ct. at 2855 ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to *specific jurisdiction*. But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general jurisdiction* over a defendant." (citation omitted, emphasis added)); *id.* at 2856 (rejecting the "sprawling view of general jurisdiction urged by respondents and embraced by the North Carolina Court of Appeals, [where] any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed."); *McIntyre*, 131 S. Ct. at 2790 (providing hypothetical example of an "undesirable consequence" of Justice Brennan's approach in *Asahi*, where a small farm might sell crops to a large distributor and end up being sued in a faraway jurisdiction, necessitating "significant [litigation] expenses . . . just on the preliminary issue of jurisdiction"). Accordingly, the court does not have general personal jurisdiction over the defendant.

### *2. There is no Specific Jurisdiction Over the Defendant*

Likewise, under applicable Federal Circuit law, extensive sales through the stream of commerce are not sufficient to confer specific personal jurisdiction over a declaratory judgment defendant when there is no allegation of enforcement activity within the forum. As discussed above, both the state's long-arm statute and due process requirements must be satisfied in order for a court to exercise specific jurisdiction. Here, the Georgia long-arm statute is easily satisfied because the court has assumed the defendant transacts extensive business within the state. O.C.G.A. § 9-10-91(1); Compl. ¶ 10 [Doc. No. 1].

Nevertheless, applying the Federal Circuit's due process test, *see Breckenridge*, 444 F.3d at 1363, the court holds that this patent declaratory judgment action does not satisfy the requirements of due process because International's only contacts within the forum are sales of its patented product and not enforcement activity. *See Radio Sys. Corp.*, 638 F.3d at 789 ("[O]nly those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action."); *Avocent*, 552 F.3d at 1332. It is undisputed that International has taken no enforcement action in this forum aside from a licensing demand

letter sent on March 26, 2012.[5] Thus, excluding the sales activities in Georgia, the only jurisdictionally relevant contact with the forum is the single license demand letter, which cannot alone justify the exercise of specific jurisdiction. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (holding three cease-and-desist letters sent by the declaratory judgment defendant were insufficient contacts to create personal jurisdiction).

Atlantis attempts to circumvent this line of authority by citing *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424 (Fed. Cir. 1996), which held, quite explicitly, that the stream of commerce theory could apply in a patent declaratory judgment action. Applying that theory, the court found the defendant patentee's advertising, sales (including through a distributor), and marketing materials within the forum showed the defendant had purposefully availed itself of the state's law. *Id.* at 429. Standing alone, *Viam* appears to provide strong support to Atlantis's argument that International's assumed distribution and sales of its products and possible advertisement to

---

[5] Although International's patent infringement action against Atlantis and other defendants to enforce the same patents at issue is now pending before this court, that case was transferred here against International's wishes after the present suit had been filed. Thus, the court will not charge this enforcement activity in this forum to International.

Georgia residents through its website allow the court to exercise specific jurisdiction in this case.

However, subsequent Federal Circuit's cases have explained *Viam* as *supporting* the conclusion that sales activity alone does not suffice to establish jurisdiction—it must be accompanied by enforcement or defense of the patent. In *Avocent*, the panel majority stated, "[W]e have *consistently* required the defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents." 552 F.3d at 1334 (emphasis added). The court cited a number of previous panel decisions as examples where these "other activities" had been found; this includes *Viam*, which the court characterized, in a parenthetical, as "finding jurisdiction where 'according to their own submission . . . the defendants ha[d] initiated a *suit seeking to enforce the same patent* that is the subject of this suit against other parties, unrelated to this action, in the same district court." *Id.* at 1335 (quoting *Viam*, 84 F.3d at 430) (emphasis added in *Avocent*); *see also id.* at 1338–39 ("*Avocent*'s reliance on *Viam* is unavailing. In that case, the patentee's relevant jurisdictional activity *included enforcement proceedings* involving the same patent in the same court against other alleged infringers—a significant contact with the forum materially related to the enforcement of the relevant patent." (emphasis added)). Later,

26

in *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009), the panel majority held that the dissenting judge incorrectly read *Avocent* as conflicting with prior precedent, noting: "The court in *Avocent*, however, considered and distinguished the very precedent that the dissent cites. In *Viam*, for example, where this court held personal jurisdiction existed, the patentee had sued another infringer in the same court on the same patent-enforcement efforts in the forum." *Id.* at 1020 (citations omitted).

Thus, while *Viam* may remain good law in terms of supporting the argument that products placed into the stream of commerce may constitute *some* contacts for the due process analysis, subsequent Federal Circuit cases have elaborated that these commercial contacts are not *sufficient* to exercise specific jurisdiction. *See also Lake Assocs., LLC*, 2012 WL 3573892, at *7 ("In *Avocent* . . . the Federal Circuit placed *strict limitations* on what 'other activities' may be used to support the assertion of specific personal jurisdiction in a declaratory judgment action relating to patents." (emphasis added)).[6] In isolation, *Viam* provides strong support for Atlantis's position

---

[6] The majority in *Avocent* recognized that the precedent on which it relied was "not without controversy," 552 F.3d at 1336, and Judge Newman wrote strong dissents in both *Avocent* and *Autogenomics*. Further, some authors have agreed with the dissents' criticisms. *E.g.*, Donald W. Rupert & Daniel H.

that International may be sued in Georgia based on its stream of commerce contacts alone. But the Federal Circuit has now twice cited *Viam* to support the rule that enforcement activity is necessary for specific jurisdiction in declaratory judgment suits; the court must apply that rule. Accordingly, because Atlantis makes no allegations regarding International's enforcement or defense of the patents at issue in this state, the court cannot exercise specific jurisdiction over this declaratory judgment action. *Cf. Autogenomics*, 566 F.3d at 1021 (concluding the district court did not have specific personal jurisdiction over the defendant because the plaintiff "failed to allege sufficient activities 'relat[ing] to the validity and enforceability of the patent' in addition to the cease-and-desist communications" (quoting *Avocent*, 552 F.3d at 1336) (alteration in original)). International's motion to dismiss for lack of personal jurisdiction [Doc. No. 7] is GRANTED.

---

Shulman, *Clarifying, Confusing, or Changing the Legal Landscape: A Sampling of Recent Cases from the Federal Circuit*, 19 Fed. Circuit B.J. 521, 544–559 (2010); Marta R. Vanegas, Note, *You Infringed My Patent, Now Wait Until I Sue You*, 92 J. Pat. & Trademark Off. Soc'y 371 (2010). Nevertheless, this court is bound to apply the rule as stated by the majority. *Radio Sys. Corp.*, 638 F.3d at 790 ("While the facts of this case differ from those in *Avocent*, the principles of *Avocent* govern this case."); *Autogenomics*, 566 F.3d at 1020 n.1 (stating that *Avocent* "is now clear and binding precedent").

III.   **Plaintiff's Motion for Jurisdictional Discovery [Doc. No. 12]**

The plaintiff also moved for leave to conduct jurisdictional discovery [Doc. No. 12] in the event that the court concluded, as it has, that the defendant's motion to dismiss should be granted.[7] Atlantis seeks discovery to support both its general and specific theories of jurisdiction, and would request the following information from the defendant:

- the activities of International's Georgia dealers and the particulars of its dealings with them,

- any licensees that International may have in Georgia,

- extra-judicial attempts made by International to enforce patents in Georgia, and

- other contacts International has with the State of Georgia."

[Doc. No. 12, at 2]. Additionally, Atlantis states that it needs discovery to "test certain representations" made in International's briefs and declarations and to reveal whether International "intentionally pared down its number of advertised dealers" on its website after the complaint was filed. *Id.* at 3. In the motion, Atlantis presents no argument as to how these potential topics

_____

[7] The law of the Eleventh Circuit applies to the question of whether jurisdictional discovery is appropriate here. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) (reviewing the denial of discovery, "an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit")

for discovery would show personal jurisdiction exists. However, in its reply brief, Atlantis states that the facts it "seeks to prove through jurisdictional discovery would support" its stream of commerce theory of jurisdiction and would "bring clarity" to the question of the defendant's contacts in Georgia through International's distributor. *See* [Doc. No. 20, at 8–12]

The court finds that the plaintiff has not made a showing that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction. First, the activities and "particulars" of International's dealings with its distributor or "dealers" in Georgia are not relevant to either the general or specific jurisdiction inquiries, as discussed above. On the other hand, if International has any licensees or has made attempts to enforce its patents in this state, those would be highly relevant to the issue of specific jurisdiction over it. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008) (stating that a defendant patentee's "exclusive license or other obligation relating to the exploitation of the patent" in the forum may constitute activity purposefully directed at the forum that relates to enforcement or defense of the patent).

The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a "'fishing expedition' in hopes that discovery will sustain the

30

exercise of personal jurisdiction." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1305 (N.D. Ga. 2005); *Vogt v. Greenmarine Holding, LLC*, No. 1:01-cv-0311-JOF, 2002 WL 534542, at *7 (N.D. Ga. Feb. 20, 2002) (denying jurisdictional discovery because the evidence the plaintiff "anticipated being able to adduce in the discovery process" would "still have failed to make out a prima facie case of personal jurisdiction"); *see also Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) ("[Jurisdictional] discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'"). The allegations of the complaint do not suggest any such licensing or enforcement activities, and Atlantis has presented no affidavits or argument stating it has any reason to believe that there are any in Georgia. Rather, Atlantis essentially argues it should be allowed to conduct discovery to find out if International has engaged in any activity that would allow Atlantis to sue in this forum and allow the court to exercise personal jurisdiction over the defendant.[8] Here, there are no disputed facts; Atlantis merely has a hunch

---

[8] Atlantis states at one point in its brief that International "has not denied that it has" licensees in Georgia. *See* [Doc. No. 12, at 2]. However, Atlantis has never accused International of having any licensees, so International was not required to deny the fact.

that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction. On this basis, the plaintiff has not shown it is entitled to jurisdictional discovery, and its motion [Doc. No. 12] is DENIED.

## IV.   Conclusion

The three motions for leave to file supplemental briefs [Doc. Nos. 15, 21, 24] are GRANTED. The defendant's motion to dismiss [Doc. No. 7] is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction over the defendant. The plaintiff's motion to conduct jurisdictional discovery [Doc. No. 12] is DENIED. The plaintiff's motion for a stay pending reexamination by the PTO [Doc. No. 27] is DISMISSED AS MOOT.

**SO ORDERED** this 3rd day of January, 2013.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge